# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| SYNOVA HEALTHCARE, INC, et al.[1], | ) | Case No. 07-11889 (CSS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

## DECLARATION OF JEOFFREY L. BURTCH, CHAPTER 7 TRUSTEE, IN SUPPORT OF SALE MOTION

1. I am currently a director with the law firm of Cooch & Taylor. Pursuant to this Court's order of December 28, 2007, I was appointed the Chapter 7 trustee in these cases.

2. Along with my counsel in this matter, I have been intimately involved in all aspects of the sale process and have personally reviewed all of the sale related documents.

3. On February 13, 2008, at my direction, counsel filed the *Motion of Jeoffrey L. Burtch, Chapter 7 Trustee, to: (I) Establish Procedures to Govern the Sale of the Debtors' Assets Through Public Auction; (II) Approve the Assumption and Assignment of Unexpired Leases and Executory Contracts Designated by the Buyer(s); and (III) Approve the Sale of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances* ("Bid Procedures Motion"). On February 20, 2008, the Court entered an Order approving the Bid Procedures Motion.

4. Pursuant to the Bid Procedures, prospective bidders were required to submit the following documents by March 25, 2008 in order to be considered a qualified bidder: (1) a signed asset purchase agreement; (2) a good faith deposit of 10% of the

---

[1] The Debtors are Synova Healthcare, Inc., Synova Pre-Natal Healthcare, Inc., Allendale Pharmaceuticals, Inc., Todays Womencare Company, and Synova Healthcare Group, Inc.

1

proposed purchase price; and (3) evidence of financial wherewithal to consummate a sale transaction.

5. In consultation with counsel, I determined that PAV Nova ("PAV" or "Purchaser") and Plainfield Direct had submitted Qualified Bids for the purchase of the Debtors' assets under the Bid Procedures.

6. On March 27, 2008, I conducted an Initial Auction at which PAV and Plainfield, as Agent, were the only Qualified Bidders. The Initial Auction was subsequently continued and after further communication with the Qualified Bidders and the submission of a revised bid by PAV and no further bid by Plainfield, I declared that PAV had submitted the highest and best offer for the Debtors' assets under the Bid Procedures Motion, as reflected in that certain Asset Purchase Agreement, dated April 11, 2008, by and between, Jeoffrey L. Burtch, the Chapter 7 Trustee for the estates of Synova Healthcare, Inc.; Synova Pre-Natal Healthcare, Inc.; Allendale Pharmaceuticals, Inc.; Todays Womencare Company, and Synova Healthcare Group, Inc., as Seller, and PAV Nova, Inc., as Purchaser ("APA").

7. Prior to the Final Auction, the Trustee, Plainfield, for itself and as Agent, SF and the AFI Parties (as defined in the APA) engaged in extensive negotiations regarding (i) the sale of most of the Debtors' assets to PAV as set forth in the APA, (ii) the interests contemplated by the Settlement Agreement in favor of certain Series A Noteholders in certain assets to be acquired under the APA by PAV, and the resolution of any and all claims that could be asserted by Trustee or Series A Noteholders against any of the AFI Parties.

8. The APA provides for a purchase price of $800,000. The APA submitted today for approval by the Court is a result of those negotiations and in my opinion represents the highest and best offer of value to the Debtors' estates.

9. In consultation with the professional retained in these cases and the former CFO of the Debtors, I marketed the Purchased Assets and conducted the sale process in accordance with the Bid Procedures. I provided notice of the sale of the Purchased Assets to Purchaser to each of the entities that previously expressed a bona fide interest in the Purchased Assets or the Business.

10. It is my opinion that entry into the Purchase Agreement and consummation of the Transactions constitute the exercise of sound business judgment and such acts are in the best interests of the Debtors, their estates and creditors, and all parties in interest.

11. The Purchase Agreement and the Transactions were negotiated and have been and are undertaken by the Trustee and Purchaser at arms' length without collusion or fraud, and in good faith within the meaning of Section 363(m) and (n) of the Bankruptcy Code. Moreover, neither I nor Purchaser engaged in any conduct that would cause or permit the Purchase Agreement, the consummation of the Transactions or the assumption and assignment of any assumed executory contracts to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.

12. The total consideration provided by Purchaser for the Purchased Assets is the highest and best offer received, and in my opinion the Purchase Price constitutes reasonably equivalent value and fair consideration for the Purchased Assets.

3

13. It is my opinion based upon representations by Purchaser that it has the financial wherewithal to consummate the sale transactions as contemplated under the various sale documents submitted today for approval by the Court.

14. The APA provides for the release of certain claims by the trustee against the AFI Parties (AFI, Norwich and PAV). Among those claims released are claims arising under Chapter 5 of the bankruptcy Code.

15. In particular, Norwich received payments totaling over $1.5 million during the 90 days immediately preceding the Petition Date. In consultation with counsel, I engaged in review of certain potential preference claims against Norwich, along with those defenses asserted by Norwich. On March 25, 2008, I received a letter from Norwich's counsel outlining in detail the basis for their defenses to any preference action that I might commence. In reviewing this letter, I determined (in consultation with counsel and former representatives of the Debtors) that Norwich had significant defenses to any preference action I might initiate.

16. Based on my analysis, I determined (in consultation with counsel) that the receipt of $50,000 plus the waiver of significant claims and potential administrative expenses by Norwich was fair consideration for the releases provided in the APA. To that end, the APA provides for $50,000 of the $800,000 purchase price to be paid to and retained by the Debtors' estates on account of the release of these potential causes of action and for the release of claims by the AFI Parties.

17. It is my opinion, in an exercise of my business judgment, that the sale proposed today represents the highest and best offer for the Debtors' assets. The sale is a product of a deliberative sale process and negotiations conducted at arms length and in

good faith. It is my understanding based upon the results of the auction process that no other person or entity is prepared to or would make an offer higher and better than that of PAV as evidenced by the various transaction documents submitted to the Court today.

Dated: April 11, 2008

_____
Jeoffrey L. Burtch
Chapter 7 Trustee

Sworn to and subscribed before me
this 11 day of April, 2008.

_____
Notary Public

My commission expires 7-6-09

VALERIE HINTON
NOTARY PUBLIC
STATE OF DELAWARE
My commission expires July 6, 2009

5